Chicago & Northwestern Railway Company, Plaintiff, vs. Forest County and others, Defendants.

*December 22, 1896 — January 12, 1897.*

*Assessment and collection of taxes: Special law limiting taxation: Constitutional law: Equity: Seizure of personal property of railroad to satisfy tax.*

1. The restriction of subd. 6, sec. 31, art. IV, Const., against the enactment of special legislation "for the assessment and collection of taxes or for extending the time for the collection thereof" embraces all the proceedings for raising money by the exercise of the taxing power from the inception of the proceeding to its conclusion,

Chicago & Northwestern R. Co. vs. Forest County and others.

and took from the legislature all power, past, present, and future, of special legislation on the subject. Laws, therefore, limiting the amount which it shall be lawful for a certain county and the several towns therein to raise and expend for the various purposes for which taxes may be levied, are unconstitutional and void. [Whether such laws are in violation of sec. 23, art. IV, Const., providing for a uniform system of town and county government, not determined.]

2. The objection that a town tax was void because the resolution authorizing it failed to specify the specific purposes for which it was to be expended is not available in an action in equity to set aside the tax and enjoin its collection.

3. Property of a railroad company, such as coal and tools for use in repairing the tracks, necessarily used in operating the road, is not liable to seizure and sale on execution to satisfy a tax, and an injunction may properly be issued to prevent such seizure and sale. *Hill v. L. C. & M. R. Co.* 11 Wis. 223, and *Chicago & N. W. R. Co. v. Ft. Howard*, 21 Wis. 44, overruled.

APPEALS from a judgment of the circuit court for Forest county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

This is an action to set aside and enjoin the collection of certain county taxes and of town and school taxes in the town of *Crandon*, Forest county, for the year 1895, on the ground that they were levied greatly in excess of the limits imposed by ch. 270, Laws of 1887, as amended by ch. 505, Laws of 1889, and ch. 39, Laws of 1891, as extended by ch. 283, Laws of 1893, and ch. 338, Laws of 1895; plaintiff being a large owner of real estate in the said town of *Crandon*. The complaint alleged certain irregularities in the levying of the taxes, and asked that the defendants be enjoined from collecting such portion thereof as was claimed to be illegal and inequitable. *Forest* county was organized by ch. 436, Laws of 1885; and by ch. 270, Laws of 1887, the amount of taxes which the county and which its towns might raise in any one year was limited, and succeeding statutes enlarged the limitations, until, in 1895, the limit of county taxes was $1,500 for county roads, and $10,500 for other county pur-

poses, and of town taxes in *Crandon*, $3,500 for town and $550 for school purposes. Nevertheless, for that year, the county voted a tax, no part of which was for roads, of $21,137.84, and the town a tax of $2,500 for town and $3,000 for school purposes. These taxes, in due proportion, were extended on the plaintiff's lands to the amount of $6,098. The plaintiff affirms, and the defendants deny, that the limitations are constitutional, and on this question depends the validity of the taxes in excess of the amounts thus limited. The town meeting voted the town tax of $2,500 "for all town purposes," and the plaintiff claims that this tax is void, because not voted for any specified, authorized purpose.

The court, after trial, held that the taxes were valid, and plaintiff appealed from the part of the judgment which sustains the taxes, and the defendants appealed from the part of said judgment which enjoined and restrained the collection of said taxes from and out of certain personal property at Monico Junction, belonging to the plaintiff, namely, twelve coal buckets, one shovel, all coal in the shed, four lamps, one pick, and two scoop shovels; and two hand cars, one push car, and five coal buckets at Pratt Junction, which property had been seized for the payment of said taxes. And it was alleged that it was necessarily used, and necessary for use, in operating said railroad and carrying the mail, and in the performance of the plaintiff's duties as public carrier, and to the exercise of its franchise to operate said railroad; that, unless plaintiff could continue to use the same, its said business of transportation and carrying the mail would be seriously interrupted, and the running of its trains would be disarranged and confused; that the coal buckets, chains, and coal shovels are part of the plaintiff's hoisting apparatus and machinery, necessary at all times for handling said coal, and the use and running of locomotives; that said cars and tools and other property were necessary to

Chicago & Northwestern R. Co. vs. Forest County and others.

maintain the track of said road in safe condition, and theiŕ
seizure and sale would endanger life and property in the
business of such transportation.

*George G. Greene*, for the plaintiff, contended, *inter alia*,
that the limitation of sec. 31, art. IV, Const., does not apply
to the laws limiting the amount of taxes which might be
*raised* or *expended* in towns of *Forest* county.  Had they
limited the power to *vote* taxes, they plainly would not have
been within the constitutional prohibition.  To vote taxes
is to determine their purpose and amount.  It is by the leg-
islature directly, or by its delegates.  When voted or deter-
mined, the taxes must be *assessed* — apportioned to the tax-
ables of the district for which they were voted.  The word
" assessment" sometimes includes the listing and valuation
of taxables; sometimes only their valuation; *never* the act of
voting the tax.  Under every meaning — legal, literary, and
statutory —" assessment" presupposes an existing tax, and is
the manner of imposing it on persons or property.  Cooley,
Taxation, 324, 332, 351, 352; 25 Am. & Eng. Ency. of Law,
199, note 2; *People v. Weaver*, 100 U. S. 539.  A law cannot
be said to be for assessment or collection of taxes, or spe-
cial as to them, when it leaves them to be made under exist-
ing general laws precisely as every tax in every town and
county in the state is assessed and collected.  Many hun-
dreds of special laws, enacted since sec. 31 was adopted,
regulate the power to tax, by directing, authorizing, or lim-
iting taxes, and thereby affect their amounts.  Such laws
are not "for the assessment or collection of taxes."  *Simon v.
Northup*, 27 Oreg. 487; *State ex rel. Williams v. Fogus*, 19
Nev. 247; *Binkert v. Jensen*, 94 Ill. 283; *Harrison v. Mil-
waukee Co.* 51 Wis. 658, 659.  An intent to forbid all special
laws affecting taxes would have been expressed quite other-
wise than by the words of subd. 6.  The prohibition would
have been against such laws on the subject of taxation, or
for voting or levying taxes, as well as for assessing and col-
lecting them.  It is certain there are laws on the subject of

taxes which are not for their assessment and collection. *Expressio unius est exclusio alterius.*

*Samuel Shaw* and *A. W. Shelton,* attorneys, and *L. W. Bliss* and *M. J. Wallrich,* of counsel, for the defendants.

PINNEY, J. 1. The county of *Forest* was created by ch. 436, Laws of 1885. As thus created, it consisted of two towns therein, named, respectively, Sand Lake and Pelican; and the general laws of the state, in respect to the assessment, levying, and collection of taxes, became applicable to it. By ch. 270, Laws of 1887, the territory of the county was divided into three towns, named therein, respectively, Pelican, *Crandon,* and Gagen. By the second section of this act it was provided: "It shall be unlawful for any town in said county *to raise or expend* an amount exceeding $2,500 in each year, for five years, for town purposes, and it shall be unlawful for any town in said county *to raise or expend* an amount exceeding $1,500 in each year for five years, for school purposes. The total amount of taxes *to be raised or expended* in all the towns in *Forest* county for town and school purposes, shall not exceed the sum of $12,000 in each year, for five years. And whenever any town whose boundaries are fixed by section one of this act, is divided into two or more towns within five years, the amount of $2,500 for town purposes, and of $1,500 for school purposes hereby fixed for said town, shall be correspondingly divided, and each part thereof shall be the tax for town and school purposes for each such subdivision." These restrictions were extended by subsequent statutes, and the amounts increased, until 1895, when the limit of county taxes for county roads was $1,500 and $15,000 for other county purposes, and of town taxes in the town of *Crandon* was $3,500 for town and $550 for school purposes. The taxes for 1895 for both town and county purposes, as stated, were largely in excess of these limitations.

The defendants insist that the legislation imposing these

restrictions is unconstitutional and void, and that the taxes are valid, upon the ground that such legislation is in violation of subd. 6, sec. 31, art. IV, of the constitution, by which the legislature is prohibited from enacting any *special* or private law " for the assessment or collection of taxes or for extending the time for the collection thereof; " and it is contended that the legislation in question, so restricting taxation in the county of *Forest* and the several towns thereof, is *special* legislation, and is for that reason void. We think that this objection is well taken.   The power to levy taxes is undoubtedly one which belongs exclusively to the legislative department, and, when exercised by a delegate town or city, through its officers, the legislature only exercises a power through its subordinate agents which it could exercise directly.   *Meriwether v. Garrett*, 102 U. S. 472; *New Orleans v. Clark*, 95 U. S. 644.   It is not questioned but that the laws under consideration are *special* laws. By sec. 32, art. IV, Const., it is provided that " the legislature shall provide *general* laws for the transaction of any business that may be prohibited by section 31 " of that article.   It is argued that the enumeration " for assessment and collection of taxes " does not embrace every law on the subject of or affecting taxes, and every law not so included may be special, and that the test whether a law relating to taxes is or is not for their assessment or collection is that a law which fixes or affects the time or mode of apportioning taxes to taxables or persons, or of enforcing the taxes so apportioned, is " for the assessment or collection of taxes," and must be general; all others are not, and may be special. The difficulty with this contention is, we think, that it construes the provision too strictly and literally, and without regard to the manifest purposes of the section.   The object of sec. 31, art. IV, Const., was to restrict and lessen the evils of special legislation, so appropriately and vigorously stated by RYAN, C. J., in *Kimball v. Rosendale*, 42 Wis. 415.

When *Forest* county was organized, the general statutes of the state applied to the matter of taxation for county, town, and school purposes, in every aspect in which it might be considered, as it did in every other county in the state. This condition, as to *Forest* county, was so far changed by the legislation in question, which was special in its character, that it was made *unlawful* for the county, or any town in it, to "raise and expend" amounts for the several purposes stated, except those named in the acts relating to *Forest* county, in any one year. Thereafter the law for imposing and collecting county, town, and school taxes in *Forest* county was a *special* law, applicable only to that county, with restrictions or limitations not existing as to any other county in the state. The argument of plaintiff's counsel overlooks the scope of the statute, which extends to and renders unlawful any and all proceedings whatever for raising taxes in excess of the sums stated in the county and towns named. The sense and meaning of the constitutional prohibition is as broad as the language of the statute, and extends to all the various proceedings required to be taken "to raise" money by taxation. It forbids the enactment of special laws touching the entire subject and method of taxation. This was the construction placed upon the constitutional prohibition in *Kimball v. Rosendale*, 42 Wis. 407, and is decisive of the question. There the act under consideration was to validate taxes that had been charged and extended upon the roll which had not been lawfully voted or levied, and it was urged that the constitutional amendment of 1871 did not forbid the enactment of a special law curing a defective execution of a power previously existing, and that the act there in question was not properly an act "for the assessment and collection of taxes," the same argument that is urged in support of the legislation here in question. But the contention failed, for the reason that the power to levy, or authorize a levy of, a tax by special act, had been taken

away by the constitutional amendment; and that "a legisla-
ture constitutionally restrained from authorizing a thing
cannot ratify the thing imperfectly done, under another au-
thority given before the restraint; it cannot ratify what it
cannot do, for its ratification must carry present authority
back to the time of the thing ratified;" and that all the
cases "supporting legislative authority to pass curative stat-
utes are expressly or tacitly rested upon the power of the
legislature to do in the present what it ratifies in the past."
It was accordingly held that the power to ratify the void
tax by a special act did not exist, because the legislative
power to then impose or authorize it by special act had been
taken away, and that in this respect there was "no distinc-
tion between retrospective and prospective legislation." By
this case the phrase "for the assessment or collection of
taxes" was thus construed as synonymous with the power
to impose or raise taxes; and, as said in *Prentice v. Ashland
Co.* 56 Wis. 345–346, "the word 'assessment' goes *to the
whole statutory method of imposing taxes upon property.*"
We cannot, therefore, hold that the power to pass special
laws for imposing or levying taxes survived the constitu-
tional amendment.

The construction that plaintiff's counsel puts on the pro-
vision is too narrow, and ignores in a very great measure
the evils of special legislation intended to be suppressed by
it, and is quite too technical as applied to the construction
of a constitutional provision. The language of the provis-
ion is not used in any restricted or technical sense, and the
words "assessment and collection of taxes," as already re-
marked, were designed to include the whole operation of
raising taxes, from commencement to termination. The
words "assessment" and "levy," as applied to taxation, have
been variously defined. The word "levy" has been held
synonymous with collect, and that to "assess" a tax is to
declare it payable, and to "levy" is to collect it, or raise it.

Anderson, Law Dict.; *Vallé v. Fargo*, 1 Mo. App. 345; *Moore v. Foote*, 32 Miss. 469–479.   We consider that the word "assessment," in the constitutional provision, is not used in the limited sense of valuing property for the purpose of apportioning taxes.   The same view of the scope of the constitutional prohibition was taken in *Nevil v. Clifford*, 63 Wis. 435–447, where it was held that there was no difference between a special act validating a void judgment against a school district, and which would make it the duty of the tax officers to levy a tax to pay it, and a *special* act which, in terms, directed such tax to be levied; and is also sustained by and in harmony with the cases of *State ex rel. Sanderson v. Mann*, 76 Wis. 479–480, and *State ex rel. Turner v. Bell*, 91 Wis. 271.   The present case illustrates, in a striking manner, the evil policy of special legislation on the subject of taxation, if the legislation in question can be sustained; for, in a period of about eight years, there have been as many as five special acts on the subject of taxation in this county, to say nothing of the resulting confusion, uncertainty, and litigation.   We hold, therefore, that the restriction against special legislation "for assessment or collection of taxes or for extending the time of payment thereof," embraces all the proceedings for raising money by the exercise of the power of taxation, from the inception of the proceeding to its conclusion, and took from the legislature all jurisdiction, past, present, and future, of special legislation on the subject.   The question whether the legislation under consideration is not violative of sec. 23, art. IV, of the constitution, which provides for a uniform system of town and county government, was quite elaborately argued, but, for the reasons already stated, it becomes unnecessary to express any opinion upon this branch of the case.

2. The objection that the town tax of $2,500 was void by reason of the general terms of the resolution for raising it, no specification being made therein of the specific purposes

for which it was to be raised, is not available.    This precise question was considered and determined, under the provisions of the charter of the city of Superior, substantially as broad as the provisions of the statute in relation to raising town and school taxes (*Hayes v. Douglas Co.* 92 Wis. 429), and, whatever effect might be given to the objection, in an action at law, to a failure to itemize the tax, it is not available in a court of equity to enjoin or restrain its collection, as the objection does not go to the very groundwork of the tax, and necessarily affect materially its principle, and show that it must be unjust and unequal.    It is not enough to authorize the granting of equitable relief in such cases, that the tax proceeding is irregular or void.    It must also appear that it is inequitable.    *Hixon v. Oneida Co.* 82 Wis. 515. The portion of the judgment appealed from by the plaintiff is correct, and must be affirmed.

3.  The part of the judgment appealed from by the defendants must be affirmed.    The property seized for the tax in question was, at the time of its seizure, necessarily used in running and operating plaintiff's line of road, and the defendants, their officers, etc., were enjoined by the judgment from selling such property, and from seizing or selling for taxes any personal property of the plaintiff, used and necessary for use, in the operation of its road.    The franchises and rights of a *quasi*-public corporation, owing important duties to the public, and the property vested in it necessary for their use and enjoyment and the accomplishment of the purposes for which it was created, constitute an entirety, and, in the absence of special statutory authority, are not subject to be seized and sold on execution, or for mechanics' liens, or on tax process.    *Yellow River Imp. Co. v. Wood Co.* 81 Wis. 559–562; *Chapman Valve Mfg. Co. v. Oconto W. Co.* 89 Wis. 264; *Buncombe Co. Comm'rs v. Tommey,* 115 U. S. 122, 128; *Chicago, M. & St. P. R. Co. v. Milwaukee,* 89 Wis. 515; *State ex rel. Milwaukee St. R. Co. v. Anderson,* 90 Wis. 550.    The

subject is fully considered in these cases, and an injunction is proper to prevent such seizure and sale. In the cases of *Hill v. L. C. & M. R. Co.* 11 Wis. 223, and *Chicago & N. W. R. Co. v. Ft. Howard*, 21 Wis. 45, the court acted upon the theory, without actually considering and deciding the question, that the franchises of a railway company, and its property in use and necessary for their exercise and enjoyment, were not an entirety. These cases are not in accord with subsequent decisions in this and other states, and are not to be regarded as authority on the question. The portion of the judgment appealed from is correct, and must be affirmed.

*By the Court.*— The part of the judgment appealed from by the plaintiff, and the part appealed from by the defendants, are affirmed.